IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THROUGHTEK CO., LTD., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> REOLINK INNOVATION INC., ) <br> REOLINK INNOVATION CO., LTD. ) <br> (CHINA), AMAZON.COM INC., HOME ) <br> DEPOT USA, INC., LOWE'S HOME ) <br> IMPROVEMENT, LLC, MICRO CENTER ) <br> INC., TARGET CORPORATION, and ) <br> WALMART INC., ) <br> ) <br> Defendants. ) | Civil Action No. 23-218-GBW-SRF |

**REPORT AND RECOMMENDATION**

Presently before the court in this patent infringement action is a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), filed by defendant Reolink Innovation Inc. ("Reolink").[1] (D.I. 18)[2] Reolink argues that the patent claims asserted by plaintiff ThroughTek Co., Ltd. ("ThroughTek") are invalid under 35 U.S.C. § 101 because

---

[1] Reolink filed the pending motion to dismiss together with Lowe's Home Improvement, LLC, Micro Center Inc., and Walmart Inc. (D.I. 19) Lowe's Home Improvement, LLC, Micro Center Inc., and Walmart Inc. were voluntarily dismissed from the action without prejudice on September 6, 2023. (D.I. 33; D.I. 34; D.I. 35) In a footnote, Reolink represents that there is no corporate entity named "Reolink Innovation Co., Ltd. (China)," and this defendant should therefore be dismissed. (D.I. 19 at 1 n.1) Plaintiff does not respond to Reolink's assertion regarding the existence of Reolink Innovation Co., Ltd. (China). (D.I. 32) The court does not address the issue of whether Reolink Innovation Co., Ltd. (China) should be dismissed because "arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." *Celadon Holdings, LLC v. Jaguar Transp., Inc.*, C.A. No. 22-567-GBW, 2023 LW 3224500, at *5 (D. Del. May 3, 2023) (quoting *Samsung Elecs. Co. v. Netlist, Inc.*, C.A. No. , 21-1453-RGA, 2022 WL 3027312, at *5 (D. Del. Aug. 1, 2022)).

[2] The briefing associated with the pending motion to dismiss is found at D.I. 19, D.I. 32, and D.I. 36.

they are directed to patent-ineligible subject matter. For the following reasons, Reolink's motion to dismiss is DENIED.

## I. BACKGROUND

On February 28, 2023, ThroughTek brought this alleging infringement of United States Patent No. RE47,842 ("the '842 patent"), which is titled "System and Method of Identifying Networked Device for Establishing a P2P Connection" and is a reissue of U.S. Patent No. 9,787,498. (D.I. 1) The '842 patent is generally directed to a system and method for establishing a point-to-point ("P2P") connection by scanning an image, such as a bar code or QR code. (*Id.* at ¶ 23; '842 patent, col. 1:33-35, 2:8-49) Previously, users wanting to connect a networked device, such as a webcam, to a terminal device, such as a smartphone, would need to manually enter the networked device's identification code into the terminal device and request connecting information from a linking server. ('842 patent, col. 1:37-55, 1:61-67) The stated object of the invention "is to solve the slow process of establishing connections between the terminal devices and the networked devices, which is caused by excessive number of digits or characters in the identification codes." (*Id.* at 2:3-7) This is achieved by affixing a barcode image on the networked device that is captured by the terminal device and transmitted to a server, which establishes a P2P connection between the two devices without the need for manual entry of the identification code. (*Id.* at 3:33-38)

There are two independent claims in the '842 patent. Claim 1 of the '842 patent recites:

> A system to identify a networked device for establishing a point-to-point (P2P) connection, the system comprising:
>
> > a network server having a list of networked devices that are pre-registered in the network server, wherein the network server associates a corresponding identification of each networked device with a corresponding IP address of the networked device for enabling terminal devices to establish P2P connections with the plurality of networked devices;

2

> a first networked monitoring device, having a first identification embedded in the first networked monitoring device, wherein the first networked monitoring device registers the embedded first identification into the list of networked devices to associate a corresponding IP address of the first networked monitoring device with the first identification by connecting the network server through the Internet;
>
> an image pattern, being attached on the first networked monitoring device and comprising the first identification for establishing a P2P connection with the first networked monitoring device; and
>
> a terminal device, wherein the terminal device generates a connection request signal when the image pattern is captured to the terminal device; and the terminal device transmits the connection request signal to the network server through the Internet, wherein the network server obtains the first identification according to the connection request signal and obtains the corresponding IP address of the first networked monitoring device according to the obtained first identification for establishing a P2P connection between the terminal device and the first networked monitoring device, wherein the network server respectively transmits hole-punching messages to the terminal device and the first networked monitoring device via the Internet to establish the P2P connection, and wherein the first networked monitoring device does not capture any image pattern associated with the terminal device for establishing the P2P connection between the terminal device and the first networked monitoring device.

('842 patent at 9:7-47) Claim 12 of the '842 patent discloses:

> A method to identify networked device for establishing a point-to-point (P2P) connection, the method comprising the steps of:
>
> (a) connecting a first networked monitoring device to a network server through the Internet, wherein the network server has a list of networked devices that are pre-registered in the network server, wherein the network server associates a corresponding identification of each networked device with a corresponding IP address of the networked device for enabling terminal devices to establish P2P connections with the plurality of networked devices;
>
> (b) registering a first identification of the first networked monitoring device into the list of networked devices of the server;
>
> (c) providing an image pattern comprising the first identification, wherein the image pattern is attached on the first networked monitoring device for establishing a P2P connection with the first networked monitoring device

3

>  (d) generating a connection request signal by a terminal device when the image pattern is captured to the terminal device and transmitting the connection request signal to the network server by the terminal device through the Internet; and
>
>  (e) identifying the first networked monitoring device in the list of the networked devices of the network server to obtain the first identification according to the connection request signal and obtain the corresponding IP address of the first networked monitoring device according to the obtained first identification for establishing a P2P connection between the terminal device and the first networked monitoring device, wherein the network server respectively transmits hole-punching messages to the terminal device and the first networked monitoring device via the Internet to establish the P2P connection, and wherein the first networked monitoring device does not capture any image pattern associated with the terminal device for establishing the P2P connection between the terminal device and the first networked monitoring device.

(*Id.* at 10:18-58)

## II. LEGAL STANDARD

Rule 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

Patentability under 35 U.S.C. § 101 is a threshold legal issue which may be raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010); *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017). The court is not

required to individually address claims not asserted or identified by the non-moving party, so long as the court identifies a representative claim and "all the claims are substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (internal quotation marks and citations omitted).

## III. DISCUSSION

Section 101 of the Patent Act defines patent-eligible subject matter as follows: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. Laws of nature, natural phenomena, and abstract ideas are the three categories of subject matter that are not patent eligible. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). The purpose of these exceptions is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012). "[A] process is not unpatentable simply because it contains a law of nature or a mathematical algorithm" because "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id.* (internal quotation marks and emphasis omitted). To transform an unpatentable concept into a patent-eligible application, "one must do more than simply state the [ineligible concept] while adding the words 'apply it.'" *Id.* at 72 (emphasis omitted).

In *Alice*, the Supreme Court reaffirmed the two-step framework laid out in *Mayo* for distinguishing patents that claim ineligible subject matter from those that claim patent-eligible applications of those concepts. *Alice*, 573 U.S. at 217. First, the court must determine whether the claims are drawn to a patent-ineligible concept, such as an abstract idea. *Id.* To do so, the

5

court examines the focus of claim and its character as a whole. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). In the context of claims covering computer applications, the court must consider whether the focus of the claims is on "the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018) (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016)).

If the claims are drawn to an abstract idea at step one of the analysis, the court must look to "the elements of the claim both individually and as an ordered combination" to see if there is an "inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217-18. "A claim that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." *Id.* at 221. Such "additional features" are not enough to constitute an inventive concept if they are "well-understood, routine, conventional activities." *Id.* at 225.

### A. Representative Claim Analysis

The parties dispute whether independent claim 12 is representative of the claims in the '842 patent. Reolink argues that claim 12 is representative of all other claims in the '842 patent because claim 1, the only other independent claim, recites a "system" for the same purpose as the method of claim 12. (D.I. 19 at 6-8) As for dependent claims 2-4, 6-11, and 13-19, Reolink maintains that they include only minor differences insufficient to give them patentable weight over the independent claims. (*Id.* at 8) ThroughTek responds that independent claims 1 and 12

each recite unique limitations, and neither should be considered the only representative claim. (D.I. 32 at 4)

Under the circumstances of this case, the court need not decide whether Reolink has proven that claim 12 of the '842 patent is representative. For the reasons set forth at § III.B, *infra*, Reolink has failed to meet its burden at step one with respect to claim 12. Because Reolink contends that claim 12 is representative, "it is appropriate to consider only claim [12] and to deny the motion in full based solely on [the] evaluation of claim [12]." *See Natera, Inc. v. ArcherDX, Inc.*, C.A. No. 20-125-LPS *et al.*, 2020 WL 6043929, at *2 (D. Del. Oct. 13, 2020).

### B. *Alice* Step One

At step one, the court considers "what the patent asserts to be the focus of the claimed advance over the prior art." *Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021). Reolink contends that the '842 patent "is directed to the abstract idea of using an image (such as a barcode or QR code) to convey information needed to establish a communication link (a P2P connection)." (D.I. 19 at 8-9) Reolink does not argue that the claims of the '842 patent are directed to a fundamental truth or a method of organizing human activity, such as a longstanding economic or commercial practice. *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256-57 (Fed. Cir. 2014). ThroughTek responds that the claims are directed to non-abstract, patent-eligible improvements to computer technology. (D.I. 32 at 5)

Here, the focus of claim 12 is on a specific improvement to computer capabilities, as opposed to an abstract idea for which computers are invoked merely as a tool. *See Enfish*, 822 F.3d at 1335-36. The specification of the '842 patent explains that establishing a P2P connection between a networked device and a terminal device previously required the manual entry of the networked device's lengthy identification code, which was cumbersome and time-consuming.

7

('842 patent, col. 1:45-67) The "object of the present invention" disclosed in the '842 patent is to "solve the slow process of establishing connections between the terminal devices and networked devices, which is caused by excessive number of digits or characters in the identification codes."[3] (*Id.*, col. 2:3-7) This advance is achieved by using an image pattern on the networked device, such as a barcode or QR code, which allows the networked device to be identified by the terminal device's image capture unit to establish a P2P connection without the manual entry of the networked device's identification code. (*Id.*, col. 2:8-29) The specification describes in detail how the technological solution is implemented:

> In summary, a connection barcode is attached to a networked device corresponding to an identification code of the networked device, the connection barcode can be scanned by an image capture unit, in the terminal device or an external device, to capture the connection barcode, and the captured connection barcode image can be interpreted in the terminal device, the external device or on the network server to obtain the identification code of the networked device, whereby a P2P connection can be established between the terminal device and the networked device quickly.

(*Id.*, col. 8:50-59)

Claim 12 of the '842 patent recites the use of an image pattern on the networked device, which is disclosed in the specification as the means for eliminating the cumbersome manual input of the identification code. The method recited in claim 12 recites the step of "providing an image pattern comprising the first identification, wherein the image pattern is attached on the

---

[3] ThroughTek also argues that the claimed invention improves computer functionality by eliminating the need for the management server. (D.I. 32 at 5) Reolink correctly points out that the specification does not expressly say the invention eliminates the "management server," (D.I. 36 at 3-4), although it is implied because the specification describes a management server associated with the prior art, and it is undisputed that the management server is not recited as a claim limitation, (*Compare* '842 patent, col. 1:37-55, *with id.*, col. 10:18-8). Having already determined that the asserted claims are directed to an improvement to technology, the court need not reach the parties' dispute about whether the claimed invention eliminates the need for a management server and, if so, whether this also amounts to an improvement to technology.

first networked monitoring device for establishing a P2P connection with the first networked monitoring device," and "generating a connection request signal by a terminal device when the image pattern is captured to the terminal device[.]" ('842 patent, col. 10:33-40) The focus of the claim is therefore on an improved method of establishing a P2P connection between a networked device and a terminal device, as opposed to an abstract process merely invoking computers as a tool to facilitate generic steps and results. *See Enfish*, 822 F.3d at 1338; *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).

A comparison of claim 12 to the claims found to be patent eligible in *Enfish* supports ThroughTek's position that the '842 patent is not directed to an abstract idea. (D.I. 32 at 7) The asserted patent in *Enfish* claimed a "self-referential" table which provided a unique form of storing tabular data and obviated the need for multiple "relational" tables. *See Enfish*, 822 F.3d at 1330-31. The Federal Circuit focused on the patent's teaching of a specific type of data structure—the self-referential table—that was designed to improve the way the computer stored and retrieved data. *Id.* at 1339. Instead of broadly covering any form of storing tabular data, the claims and specification detailed the self-referential table's attributes and emphasized how it improved upon conventional database structures. *Id.* Similarly, the '842 patent is specifically directed to establishing a P2P connection between a networked device and a terminal device by using the terminal device to capture the networked device's image pattern and transmit that identification information to the network server. ('842 patent, cols. 2:8-29, 10:33-40) The narrow focus of the claims and specification does not broadly cover any means of establishing a P2P connection between a terminal device and a network device. Reolink's assertion that "[s]mart phones and computers employing the '842 patent claims operate identically as they do otherwise" is not accurate because the system and method disclosed in the '842 patent eliminate

9

the need to manually enter the networked device's identification code to establish a P2P connection with a terminal device. (D.I. 36 at 5)

Reolink's articulation of the abstract idea oversimplifies the claim language, relegating to parentheses certain narrow, specific aspects of the invention that are referenced throughout the claims and the specification. *See McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) ("We have previously cautioned that courts 'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims."). According to Reolink, the claims of the '842 patent are analogous to the claims found to be abstract in *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017). In *Secured Mail*, the Federal Circuit determined that the following claim language was not patent-eligible:

> 1. A method of verifying mail identification data, comprising:
>
>> affixing mail identification data to at least one mail object, said mail identification data comprising a single set of encoded data that includes at least a unique identifier, sender data, recipient data and shipping method data, wherein said unique identifier consists of a numeric value assigned by a sender of said at least one mail object;
>>
>> storing at least a verifying portion of said mail identification data;
>>
>> receiving by a computer at least an authenticating portion of said mail identification data from at least one reception device via a network, wherein said authenticating portion of said mail identification data comprises at least said sender data and said shipping method data; and
>>
>> providing by said computer mail verification data via said network when said authenticating portion of said mail identification data corresponds with said verifying portion of said mail identification data.

*Secured Mail*, 873 F.3d at 908. The Federal Circuit concluded that this language was "not directed to specific details of the barcode or the equipment for generating and processing it," and

10

the claim instead generically "state[d] that various identifiers are affixed to a mail object, stored in a database, scanned from the mail object, and retrieved from the database." *Id.* at 910.

Although the claims in *Secured Mail* and the claims of the '842 patent both use barcodes to convey information, they are otherwise distinguishable. "*Secured Mail* stands for the rather unremarkable proposition that using a bar code to 'communicat[e] information about a mail object' is not patent eligible." *Intellectual Ventures II LLC v. FedEx Corp.*, 2018 WL 7823098, at *4 (E.D. Tex. May 10, 2018) (quoting *Secured Mail*, 873 F.3d at 911). In contrast, claim 12 of the '842 patent discloses a method of establishing a P2P connection between a networked device and a terminal device without the need for manual entry of the networked device's identification code. ('842 patent, col. 10:18-58) The information needed to establish the P2P connection is contained in the image pattern, which is captured by the terminal device for authentication and establishment of the connection. (*Id.*) In this regard, the claims of the '842 patent are "necessarily rooted in computer technology [and] overcome a problem specifically arising in the realm of computer networks." *DDR Holdings*, 773 F.3d at 1257. These "specific technologic modifications to solve a problem or improve the functioning of a known system" take the '842 patent claims out of the realm of abstraction. *Trading Techs. Int'l Inc. v. CQG, Inc.*, 675 F. App'x 1001, 1004-05 (Fed. Cir 2017).

Reolink argues in a conclusory manner that the claims are stated in "generally functional" terms. (D.I. 19 at 9) However, the law is well-established that "the use of functional language is but one consideration in the *Alice* step one analysis" which does not override consideration of the focus of the claim and its character as a whole. *See KOM Software Inc. v. NetApp, Inc.*, C.A. No. 18-160-WCB, 2023 WL 6460025, at *8 (D. Del. Oct. 4, 2023) (citing *IOENGINE, LLC v. PayPal Holdings, Inc.*, 607 F. Supp. 3d 464, 484 (D. Del. 2022)). The claims of the '842 patent

11

do not "amount simply to instructions [to] [']apply it with a computer['] in order to carry out the claimed functions." *Inquisient Inc. v. Servicenow, Inc.*, C.A. No. 22-900-CJB, 2023 WL 2072400, at *3 (D. Del. Feb. 17, 2023). As previously discussed, the claims of the '842 patent relate to a specific improvement in computer technology, and they are sufficiently concrete and specific to render them non-abstract. *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 738 (D. Del. 2018). Thus, the use of functional language in the '842 patent is not dispositive of the § 101 inquiry.

Citing to the prosecution history, Reolink contends that the '842 patent only covers actions leading up to the establishment of a P2P connection, without actually requiring a P2P connection itself. (D.I. 19 at 14-15) Reolink discusses how this issue impacted the examiner's consideration of indefiniteness under 35 U.S.C. § 112(b) during prosecution before summarily stating that the use of a barcode to convey information does not amount to a specific technological improvement. (*Id.*) However, Reolink does not provide any case authority or meaningful analysis to support its position that this aspect of the prosecution history should inform the § 101 analysis.

ThroughTek argues that resolving the motion to dismiss in Reolink's favor at this stage of the proceedings would be premature because "[c]laim construction on terms such as 'image pattern,' will also likely affect the scope of the claimed invention." (D.I. 32 at 11) But ThroughTek does not present a proposed construction of the term "image pattern," identify a dispute between the parties regarding the meaning of the term, or explain how any such dispute might impact the § 101 analysis. (*Id.*) Generally, this information is necessary to prevail on an argument that claim construction should occur before consideration of patent eligibility under § 101. *See VB Assets, LLC v. Amazon.com, Inc.*, C.A. No. 19-1410-MN, 2020 WL 5549088, at *6

(D. Del. Sept. 16, 2020); *Tenaha Licensing LLC v. Tigerconnect, Inc.*, C.A. No. 19-1400-LPS-SRF, 2020 WL 30426, at *8 (D. Del. Jan. 2, 2020) (citing cases). Nonetheless, I recommend that the court deny the motion to dismiss without prejudice because Reolink has not shown that the claims are directed to an abstract idea on the current record. Denial without prejudice will leave open the possibility that a more developed record could impact the § 101 analysis at a later stage of the proceedings. *See Trident Holdings, Inc. v. HubSpot, Inc.*, C.A. No, 21-401-CFC, 2022 WL 823514, at *6 (D. Del. Mar. 18, 2022); *Innovative Glob. Sys., LLC v. Keep Truckin, Inc.*, C.A. No. 19-1708-MN, 2020 WL 1443201, at *7 (D. Del. Mar. 24, 2020); *IDB Ventures, LLC v. Charlotte Russe Holdings, Inc.*, 2018 WL 5634231, at *5 (E.D. Tex. Oct. 31, 2018).

### C. *Alice* Step Two

If the court adopts the recommendation at step one, there is no need to reach the parties' arguments regarding step two of the *Alice/Mayo* inquiry. *See Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1363 (Fed. Cir. 2018); *Innovative Glob. Sys.*, 2020 WL 1443201, at *7.

Even if the court were to determine that the asserted claims of the '842 patent are directed to an abstract idea at *Alice* step one, "[d]etermining whether the [invention] is well-understood, routine, or conventional is a question of fact that cannot be resolved at the Rule 12(b)(6) stage." *Cooperative Ent'mt Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 133 (Fed. Cir. 2022) (concluding that the written description "create[d] a plausible factual issue regarding the inventiveness of the dynamic P2P configuration" of the claim). The specification distinguishes the prior art from the claimed invention by describing how the invention can establish a P2P connection between a networked device and a terminal device by using an image pattern on the networked device, obviating the need for manual entry of the networked device's identification code to achieve a

P2P connection. ('842 patent, col. 1:37-2:49) Nothing in the specification suggests that establishing a P2P connection using an image pattern in this context was well-understood, routine, or conventional. Reolink's argument that P2P networks, networked devices, terminal devices, and network servers are conventional "misses the point—useful improvements to computer networks are patentable regardless of whether the network is comprised of standard computer equipment." *Cooperative Ent'mt*, 50 F.4th at 135. Consequently, I recommend that the court deny Reolink's motion to dismiss at step two of the analysis if the court determines that the claims are directed to an abstract idea at step one.

## VI. CONCLUSION

For the reasons set forth above, I recommend that the court DENY Reolink's motion to dismiss without prejudice. (D.I. 18)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: February 5, 2024

                                              Sherry R. Fallon
                                              UNITED STATES MAGISTRATE JUDGE